# UNTIED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

GARY F. MAUGER,          )
    Plaintiff,          )
                )
    v.          )          CAUSE NO.: 2:05-CV-37-PRC
                )
COMMISSIONER OF SOCIAL          )
SECURITY,          )
    Defendant.          )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by the Plaintiff, Gary F. Mauger,

on January 31, 2005, and Plaintiff's Opening Brief [DE 16], filed by Mr. Mauger on July 15, 2005.

Mr. Mauger seeks judicial review of a denial of his request for alternate calculation and payment

of Social Security Disability Benefits pursuant to 42 U.S.C. § 405(g).  For the following reasons,

the Court denies Mr. Mauger's request to reverse and remand the decision of the Commissioner.


## PROCEDURAL AND FACTUAL BACKGROUND

On June 11, 1996, Mr. Mauger filed concurrent applications for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act.  On December 18, 2001, Administrative

Law Judge ("ALJ") Robert Asbille found Mr. Mauger to be disabled beginning August 1, 2005.

This decision was not appealed by the Social Security Administration ("SSA") or by Mr. Mauger,

and the decision became the final decision of the SSA regarding Mr. Mauger's entitlement to

disability benefits.

While awaiting this decision on his pending applications, Mr. Mauger entered into a

reimbursement authorization agreement ("Agreement") with the State of Indiana ("State") on June

11, 1997. The Agreement authorized the SSA to send Mr. Mauger's initial payment of SSI benefits, equal to the amount of interim public assistance benefits previously received from the State, to the Indiana Department of Human Services or its designee, beginning the day of the month he was found eligible for SSI. The Agreement further provided that, if Mr. Mauger felt that the amount deducted from his initial payment of SSI benefits was incorrect, he had the right to a hearing before the Indiana Department of Human Services.

On January 3, 2002, the SSA informed the State of Indiana, Family and Social Services Administration, that it was aware that Mr. Mauger had filed an interim assistance reimbursement authorization and that it would notify the State when Mr. Mauger's SSI payments would be paid.

On January 9, 2002, the SSA found Mr. Mauger qualified for SSI and issued a notice of award as to the amount of his retroactive benefits as well as his prospective monthly payments. In the letter, the SSA advised Mr. Mauger that it would be sending a $545.00 check for SSI due for the month of February 2002.

Then, on January 22, 2002, the SSA advised Mr. Mauger that there were changes to his SSI payments and that the changes were for future months only. The letter explained that Mr. Mauger was not eligible for prospective SSI as of February 1, 2002, because he would be receiving $894.00 per month in prospective DIB, which was essentially too high for him to qualify for prospective SSI as well.

On January 18, 2002, the SSA advised Mr. Mauger that it had calculated his retroactive SSI benefits in the amount of $33,942.34 for the period of underpayment from June 1996 through January 2002. Mr. Mauger was notified that he would be receiving a check for $12,304.87 to be

mailed on or about January 30, 2002, and that the SSA had already paid $21,637.47 to the State as reimbursement pursuant to the Agreement between the State and Mr. Mauger.[1]

On February 10, 2002, Mr. Mauger received a notice from the SSA indicating that his retroactive DIB totaled $59,031.00 from his first month of entitlement–January 1996–and that he would receive benefits of $840.00 per month beginning in January 2002.  The letter also noted that his Medicare Medical Insurance enrollment was not processed timely but that the SSA had corrected the mistake.  Finally, this notice advised that the SSA would be paying Mr. Mauger's lawyer per the pre-approved fee agreement.

On March 7, 2002, Mr. Mauger appealed the actions of the SSA.  He questioned the calculations of his benefits, asserting that he was not entitled to the SSI payment that had been sent to the State because his DIB exceeded the amount of SSI that was paid and that the SSA's actions had created an overpayment of SSI.  On March 26, 2002, the SSA issued a decision on reconsideration and affirmed its earlier decision.  A "Special Determination" attached to the letter explained that the SSA uses an offset method for retroactive SSI and DIB when a recipient, such as Mr. Mauger, receives retroactive DIB for a period for which he received SSI.  Because Mr. Mauger was eligible for SSI from June 1996 through January 2002, the SSA utilized the offset method for

---

[1] Mr. Mauger states in his brief that the reimbursement was not paid to the Indiana Department of Human Services as set forth in the Agreement but rather to the Indiana Township Association and argues that, because 42 U.S.C. § 1320a-6 requires that reimbursement be paid to the State, an error occurred.  However, Mr. Mauger has not provided any evidence in support of this contention.  The January 18, 2002 letter cited by Mr. Mauger in support of his contention that the Indiana Township Association was reimbursed rather than the State raises a question as to what entity was reimbursed:

> As we told you in another letter, you agreed in writing that the Indiana Township Association would be repaid the money it paid you.  Your total underpayment from June 1996 through January 2002 was in the amount of $33,942.34.  The Indiana Township Association claimed $21,637.47 in *which we paid already back to the state*.  As a result, you have a balance of $12,304.87 and will be mailed to you about January 30, 2002.

R. at 187 (emphasis added).  Moreover, even assuming that the wrong Indiana department was paid, that payment issue does not affect the rights of the Mr. Mauger or the issues in this case.

the calculation of his retroactive DIB and reimbursed SSI, from his retroactive DIB benefits, for the monies already paid to Mr. Mauger and the State in retroactive SSI prior to releasing the DIB payment to Mr. Mauger. The decision also advised that Mr. Mauger's *prospective* SSI benefits, which were effective as of February 2002, were reduced to zero because, pursuant to 20 C.F.R. §§ 416.1100, 416.1111, 416.1123, his *prospective* DIB produced too much income such that he was no longer eligible for prospective SSI. Finally, the SSA advised Mr. Mauger that there was no SSI overpayment on his record.

On May 21, 2002, Mr. Mauger filed a Request for Hearing by Administrative Law Judge. On June 26, 2002, an SSA representative contacted Mr. Mauger to explain the disbursement of his retroactive benefits.

On July 17, 2002, the SSA followed up with another letter explaining the setoff provisions and explained that SSA was

> writing to let you know that we cannot pay you all of the [DIB] we withheld. This is because you received SSI money for June 1996 through March 2002.
>
> When you receive SSI money for a month, and later you receive [DIB], we sometimes have to reduce your [DIB]. We do this to make sure that your total SSI and [DIB] monthly payment is not more than it would have been if the [DIB] had been paid on time.
>
> Allowing for your [ DIB], we should have paid you $33,629.00 less in SSI money. Because of this, we are reducing your [DIB] by $33,629.00. In your next check, we will pay you the amount due for this period.

R. at 63. The letter also advised that the next check Mr. Mauger would receive would be for $21,425.00, which is all the money he was due through June 2002, and that future monthly DIB payments would be $894.00, starting in July 2002. *Id*.

4

In considering Mr. Mauger's May 21, 2002 request for hearing, ALJ William J. Wilkin initially questioned Mr. Mauger's timeliness in filing his Request for Hearing; however, as a result of correspondence between the ALJ and Mr. Mauger's representative addressing the timeliness of his appeal and outlining the issues, ALJ Wilkin took the case under advisement. On October 7, 2003, ALJ Wilkin issued an unfavorable ruling on Mr. Mauger's appeal without a hearing, concluding that Mr. Mauger's DIB were correctly offset by the full amount of the retroactive SSI payments and that no overpayment of benefits existed on his account.

After appeal of ALJ Wilkin's decision, the case was remanded to the ALJ for a new hearing on April 3, 2004. On July 28, 2004, Mr. Mauger's representative sent correspondence outlining his position on this issue. The new hearing was held by ALJ Dadabo on August 26, 2004. At the hearing, Mr. Mauger's counsel explained why Mr. Mauger felt the SSA had erred in calculating his retroactive benefits. On September 8, 2004, ALJ Dadabo issued an unfavorable decision, finding that Mr. Mauger's retroactive DIB made him ineligible for SSI during the retroactive period, that the windfall offset provisions had been accurately applied, including the reimbursement to the State of Indiana, and that, because no overpayment had occurred, the notice and waiver provisions related to overpayment cases did not apply to Mr. Mauger's situation.

On December 3, 2004, after a timely appeal, the Appeals Council issued a decision affirming ALJ Dadabo's decision. Therefore, ALJ Dadabo's September 8, 2004 decision is the final decision of the Commissioner.

A Complaint was timely filed by Mr. Mauger with this Court on January 31, 2005. On March 31, 2005, the Commissioner filed an Answer and the Administrative Record. On June 22, 2005, the parties filed a Joint Stipulation to Supplement the Administrative Record, which the Court

granted.  Mr. Mauger filed his Opening Brief on July 15, 2005.  On September 26, 2005, the

Commissioner filed a Response, and on October 14, 2005, Mr. Mauger filed a Reply.

Both parties have consented to have this case assigned to a United States Magistrate Judge

to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this

Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## ALJ DADABO'S DECISION

ALJ Dadabo made the following findings in his September 8, 2004 decision:

1.  The claimant was found to be disabled beginning August 1, 1995, and entitled to DIB and SSI payments.

2.  Since the amount of the claimant's DIB benefits would have made him ineligible for SSI payments during the retroactive period, the windfall offset provisions apply, and the Administration was not required to further develop the claimant's income during the retroactive period.

3.  The Administration first calculated the claimant[sic] past-due SSI payments to be $33,629.00,[2] subject to a reduction of $21,637.47 for the interim assistance that the State of Indiana provided to him while he waited for SSI to be paid.

4.  The Administration then calculated the claimant's past-due DIB benefits to be $59,031.00.  The Administration offset the $59,031.00 amount by $33,942.34, which included the $21,637.47 paid to the State and the $12,304.87 previously paid to the claimant, and further reduced that amount for applicable deductions, including attorney fees, Medicare premiums, etc., leaving $21,425.00,[3] which was paid on or about July 17, 2002.

5.  Because the windfall offset provisions apply, there was no overpayment of benefits.

---

[2] This figure should be $33,942.34, and the figure of $33,942.34 in paragraph 4 should be $33,629.00.

[3] This figure of $21,425.00 is comprised of all monies due Mr. Mauger through June 2002, after all calculations, deductions, and outstanding payments, including his prospective monthly DIB benefits.

> 6.  Because there was no overpayment of benefits, the issue of waiver of any overpaid benefits does not arise.

R. at 16-17.  In summary, ALJ Dadabo concluded that the SSA's calculation of benefits was consistent with the windfall offset provision of the Act, 42 U.S.C. § 1320a-6.  ALJ Dadabo further held that the SSA's policy of calculating *retroactive* SSI benefits first in order to ensure the availability of a source of funds for reimbursement to State did not violate the anti-assignment clause of the Act, 42 U.S.C. § 407, citing *Splude v. Apfel*, 165 F.3d 85 (1st Cir. 1999).  Finally, the ALJ concluded that the overpayment notice and waiver provisions did not apply to Mr. Mauger's case as he never received more or less than the correct payment due under the Act, 20 C.F.R. §§ 404.501, 416.501.  On the issue of overpayment, ALJ Dadabo reasoned:

> Another issue raised was the fact that the claimant never had the opportunity to have a threshold test applied to his income, thus resulting in the creation of an overpayment for any amounts received in SSI beyond the five month period.  20 C.F.R. § 416.1100 provides that the amount of your SSI benefits depends on your income, both earned and unearned.  20 C.F.R. § 416.1121 provides that the receipt of social security benefits (i.e., DIB payments) is considered unearned income.  Since the claimant's unearned income from DIB payments would have exceeded the amount he would have received for SSI, making him ineligible for both DIB and SSI payments, the Administration need not have gone further to determine whether the claimant had any other income that would have affected his eligibility for SSI payments during or after the retroactive period.  Because the claimant would not have retroactively been entitled to full payments under both DIB and SSI, under the windfall provisions, no overpayment was created.

R. at 15.


## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only

reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

In his Brief, Mr. Mauger does not challenge the finding of disability and award of benefits granted by ALJ Asbille on December 18, 2001; rather, Mr. Mauger argues that the SSA erred in its method of calculating his retroactive benefits and that ALJ Dadabo erred in upholding the SSA calculations. First, Mr. Mauger argues that ALJ Asbille directed the SSA to calculate his DIB prior to calculating his SSI, and, therefore, his retroactive SSI should have been calculated at zero and the money paid to the State should be restored to Mr. Mauger. Second, Mr. Mauger argues that a claimant can only receive payment for SSI after the disability decision has become final, and, therefore, an assignee must also wait for a final decision prior to receiving payment. Third, Mr. Mauger contends that SSA failed to follow the proper procedures for an overpayment. Fourth, Mr.

Mauger argues that the SSA denied him due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution.  Fifth, Mr. Mauger asserts that, because he was not eligible for the retroactive SSI, the State was not eligible for the receipt of benefits either. Finally,  Mr. Mauger reasons that the Social Security act prohibits the assignment of DIB, yet the SSA has effectively assigned Mr. Mauger's DIB to the State by first paying the State out of his retroactive SSI and then reducing Mr. Mauger's retroactive DIB by the amount of the paid out retroactive SSI.

The SSA responds that the SSA's practice of calculating retroactive SSI prior to retroactive DIB is not inconsistent with the language and legislative history of the anti-windfall provision, which was enacted to eliminate claimant windfalls in connection with reimbursement of state interim assistance programs, or with the anti-assignment clause, which prohibits the assignment of benefits to any creditor unless Congress expressly provides otherwise.  The SSA also argues that Mr. Mauger's contention that his case qualified as an overpayment case, which entitles him to various notice procedures, is unsubstantiated by the SSA regulations.

Having considered the arguments, reviewed ALJ Dadabo's decision, and evaluated the relevant law, the Court finds that substantial evidence supports ALJ Dadabo's decision and that he did not make an error of law.  The Court will address each substantive area of Mr. Mauger's arguments.

### A.  Calculation of Retroactive Benefits

Mr. Mauger's primary argument is that the SSA incorrectly calculated his retroactive SSI benefits.  Mr. Mauger argues that the SSA should have calculated his retroactive DIB first, and then,

using the means test, the SSA should have calculated his retroactive SSI by taking into account his retroactive DIB benefits as unearned income.  Essentially, Mr. Mauger argues that he has a right to have his retroactive benefits calculated in the same order that his prospective benefits are calculated.

### 1.  Statutory Framework

The Social Security Act ("Act") provides eligible disabled workers with benefits under DIB and SSI programs.  Both programs rely on the same disability requirements for eligibility.  However, the DIB program under Title II requires that applicants meet the insurance requirements of that program, which depends upon an individual applicant's prior employment.  *See* 42 U.S.C. § 401 *et seq*.  In contrast, SSI benefits are paid solely on the basis of economic need.  *See* 42 U.S.C. § 1381 *et seq*.

An individual who meets the disability requirements may have his SSI reduced if his "countable" financial resources exceed a minimum threshold.  Therefore, if an individual is eligible for prospective benefits under both programs, prospective SSI payments may be reduced or eliminated entirely because prospective DIB constitute countable income under the SSI program.  *See* 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.1121, 416.1123.  This adjustment of prospective SSI benefits to account for the payment of prospective DIB is done automatically under the "means test" to avoid a windfall recovery of SSI benefits and to help ensure that SSI benefits, which are based solely on economic need, are only paid to those recipients truly in need.  *See* 20 C.F.R. § 416.1123.  Mr. Mauger does not challenge this "means" calculation with respect to his prospective DIB and SSI benefits.  Rather, Mr. Mauger challenges the calculations of his retroactive DIB and SSI benefits.

When a disabled worker applies for benefits under both Title II and Title XVI, there is normally a period of time during which the applicant awaits the SSA's determination regarding eligibility for these benefits. Once the SSA makes an affirmative disability determination, the applicant is entitled to an award of DIB and SSI benefits retroactive to the date of the initial application. *See White v. Bowen*, 835 F.2d 974, 976 (2nd Cir. 1987). While awaiting that eligibility determination, applicants such as Mr. Mauger, may apply for and receive interim welfare assistance from their state of residence, in this case, Indiana. These individuals typically enter into a signed agreement with the state that authorizes the SSA to withhold from an eligible recipient's retroactive SSI award an amount sufficient to reimburse the state or local welfare agency for the interim benefits. *See id.* However, only retroactive SSI, not DIB, can be reimbursed back to the state. *See* 42 U.S.C. § 407 (disallowing the assignment of DIB); 42 U.S.C. § 1383(g) (authorizing the SSA to pay SSI benefits directly to the state welfare agencies as reimbursement for interim assistance); *see also Philpott v. Essex County Welfare Bd.*, 409 U.S. 413 (1973) (finding that the remittance of disability benefits to state governments is barred by § 407); 20 C.F.R. § 416.525 (permitting the SSA to withhold retroactive SSI benefits due to an individual and to pay them to a state in an amount sufficient to reimburse the state for interim assistance furnished to the individual).

*2. Challenged SSA Procedure Used to Calculate Mr. Mauger's Retroactive Benefits*

After Mr. Mauger was awarded DIB and SSI benefits by ALJ Asbille, the SSA calculated Mr. Mauger's retroactive SSI benefits first in order to reimburse the State for the interim welfare assistance provided to Mr. Mauger while he awaited the determination of his federal benefits. The SSA first determined that Mr. Mauger was entitled to $33,942.34 in retroactive SSI benefits. *See*

SSA Policy Site: POMS Section SI 02006.005, *available at* http://policy.ssa.gov/poms.nsf/lnx/0502006005!opendocument (last visited February 16, 2006) (directing that "[b]eginning September 8, 1995, field offices (FOs) must adjudicate the Supplemental Security Income (SSI) claim before authorizing payment of the retroactive Title II benefits in concurrent Title II/XVI claims"). The SSA then deducted $21,637.47 to reimburse the State for the interim assistance, and the remaining retroactive SSI benefit of $12,304.87 was sent to Mr. Mauger. The SSA later calculated Mr. Mauger's retroactive DIB in the amount of $59,031.00. Based on this calculation of his retroactive DIB, the SSA then determined that Mr. Mauger was eligible for $33,629.00 less in retroactive SSI money than the $33,942.34 (a difference of $313.34) for which he was originally found to be eligible. As a result, the SSA offset the $59,031.00 in retroactive DIB by deducting the $33,629.00 in retroactive SSI Mr. Mauger was no longer entitled to but which he and the State had already been paid. After further deducting certain other payments and attorneys' fees, the SSA paid Mr. Mauger the balance of $21,425.00 in retroactive DIB and other benefits due through June 2002. This payment was made on or about July 17, 2002.

If the $59,031.00 in retroactive DIB had been calculated first, the amount of retroactive SSI Mr. Mauger was eligible to receive would likely have been calculated to be $313.34 (the difference between the $33,942.34 Mr. Mauger was originally found to be eligible for when the SSI benefits were calculated first and the $33,629.00 less he was found to be entitled to once his retroactive DIB were calculated). Mr. Mauger would have received the $59,031.00 in retroactive DIB (minus other deductions and attorney fees), and only the $313.34 in retroactive SSI benefits would have been available to reimburse the State for the $21,637.47 in interim assistance previously paid to Mr. Mauger. *See* 42 U.S.C. § 407 (prohibiting the assignment of disability benefits); 42 U.S.C. §

12

1383(g) (permitting the assignment of SSI benefits).  As a result, Mr. Mauger would have received a windfall in the amount of approximately $21,324.13 ($21,637.47 minus $313.34) for the unreimbursed state interim assistance.[4]

Mr. Mauger challenges the procedure of calculating his retroactive SSI prior to calculating his retroactive DIB as impermissible under the windfall statute, 42 U.S.C. § 1320a-6, and a violation of the anti-assignment clause, 42 U.S.C. § 407.  He argues that his retroactive benefits should be calculated in the same order that prospective benefits are calculated–DIB and then SSI.  In support, Mr. Mauger reasons that, because his retroactive DIB and SSI calculations appeared to have been made simultaneously, the SSA should have calculated the offset immediately using the means test, which is used for prospective benefit calculations.  He also contends that the resultant reduction in his benefits and lack of notice and an opportunity for a hearing prior to the calculations violated the Fifth and Fourteenth Amendments.  Mr. Mauger further requests that the Court order the SSA to determine that his eligibility for retroactive SSI be "zero" and to restore to him the full $21,637.47

---

[4]  The following example provided by the court in *Lindsay v. Secretary of Health and Human Services*, 612 F. Supp. 366 (D.N.J. 1985) is helpful in explaining the issue in this case regarding the order of payment of the retroactive DIB benefits (Title II) and the retroactive SSI benefits (Title XVI) and the impact on reimbursement to the state for interim assistance:

> Suppose the Title II benefits are computed first. Let's say the past-due amount under Title II is $30,000. The claimant gets all of this, since under § 407, these benefits are nonassignable. Then, the Title XVI benefits are calculated, and are found to total $5,000. In the meantime, state welfare has paid out $15,000. The entire $5,000 is paid to the welfare department. But if Title II benefits are paid first, as in this hypothetical, the welfare department is out of pocket $10,000, and the claimant, who was only entitled to $35,000, is "in pocket" $45,000 (15 + 30).
>
> Now let's suppose the Title XVI benefits are computed first. Now, because Title II "income" is not figured into the needs equation, Title XVI benefits will be much higher-let's say $25,000. The Social Security Administration will pay the welfare department $15,000, pursuant to § 1383(g), and remit the rest to the claimant: $10,000. Now, in calculating Title II benefits, the Social Security Administration will offset the amounts paid under Title XVI that would not have been paid had Title II been computed first. So, having already received $25,000 in payments (15 + 10), and being entitled to $35,000, the Social Security Administration will only remit to the claimant an additional $10,000. In this example, then, the Social Security Administration pays out the same $35,000. But the welfare department is totally reimbursed for an amount it would not have had to pay had claimant originally been deemed disabled, and the claimant gets $10,000 less.

*Lindsay*, 612 F. Supp. at 367.

paid to the State.  Because all of these arguments seek the same outcome–that the Court order the SSA to calculate his retroactive DIB prior to his retroactive SSI benefits and, thereby, bypass the windfall offset provision–they will be considered collectively in the Court's analysis below.[5]

*3.  Analysis*

It is well settled in numerous United States Courts of Appeals that the SSA may first calculate and pay retroactive SSI, including repayment of state interim assistance, and then calculate the retroactive DIB and offset the retroactive DIB by the amount of the retroactive SSI without violating § 1320a-6 or § 407.  *See Splude v. Apfel*, 165 F.3d 85, 89-90 (1st Cir. 1999); *Sheppard v. Sullivan*, 906 F.2d 756, 761 n. 3 (D.C. Cir. 1990); *White*, 835 F.2d at 978-79 (2d Cir.); *McKenzie v. Bowen*, 787 F.2d 1216, 1218, 1222 (8th Cir. 1986); *Wheeler v. Heckler*, 787 F.2d 101, 106 (3rd Cir. 1986) (addressing the appropriate calculation of attorney fees for a DIB application when the offset provision is applied to concurrent, retroactive applications for DIB and SSI); *see also Detson v. Schweiker*, 788 F.2d 372, 375 (6th Cir. 1986) (holding that the application of the offset provision of § 1320a-6 is appropriate for concurrent, retroactive DIB and SSI awards but not considering the issue of repayment of state interim assistance); *Cuthbert v. Secretary of HHS*, 784 F.2d 1157, 1160 (4th Cir. 1985) (same).  The Court finds persuasive the reasoning of these courts, as set forth in

---

[5]  Mr. Mauger also claims that he was "found eligible for the full amount of SSI when he was not entitled to the full amount of SSI as reflected in the action of [the SSA] on January 22, 2002 finding that he was not eligible for SSI benefits because his Title II DIB benefits were too high."  Pl. Br., p. 7.  Similarly, Mr. Mauger later reasons that his retroactive SSI benefits were incorrect because the January 22, 2002 letter informed him that his DIB benefits were too high for him to receive SSI.  *Id.* at 16.  The reliance on the January 22, 2002 letter is unfounded as that letter dealt specifically and exclusively with *prospective* SSI benefits that Mr. Mauger was entitled to receive beginning in February 2002.  The SSA properly determined that Mr. Mauger's *prospective* DIB benefits were too high as of February 2002 for him to receive *prospective* SSI benefits.  Therefore, the January 22, 2002 letter is inapplicable to the calculation of his retroactive benefits.  Moreover, Mr. Mauger's prospective benefits are not at issue on this appeal.

detail below.  Notably, Mr. Mauger in his Reply Brief does not acknowledge this case law raised by the Commissioner.

a.  42 U.S.C. § 1320a-6, the Windfall Offset Provision

In the early 1980s, Congress drafted the original windfall provision, 42 U.S.C. § 1320a-6, to address situations in which recipients received "double" payments when they qualified for both DIB and SSI payments ("concurrent claimants").  The windfall offset provision allowed for a reduction of benefits so that the recipient would not receive the full amount of both DIB and SSI benefits.  42 U.S.C. § 1320a-6 (1982).  Following challenges to that original language by some claimants who argued that the statute should only apply to individuals who received SSI, but not to concurrent claimants, Congress amended the statute in 1984 to clarify the statute's applicability.  *See McKenzie*, 787 F.2d at 1220-21 (citing Deficit Reduction Act of 1984, Pub.L.No. 98-369, § 2615, 6A U.S. Code Cong. & Adm. News (98 Stat.) 1132 (1984)).

Section 1320a-6 provides:

(a) Reduction in benefits
Notwithstanding any other provision of this chapter, in any case where an individual--

(1) is entitled to benefits under subchapter II of this chapter that were not paid in the months in which they were regularly due;[6] and

_____

[6] In his Reply Brief, Mr. Mauger makes an argument that 42 U.S.C. § 1320a-6(a) does not apply in this case based on a mistaken reading of § 1320a-6(a)(1).  Pl. Reply, P. 3.  Mr. Mauger explains that § 1320a-6(a)(1) provides that the "reduction in benefits applies in any case where an individual (1) is entitled to benefits under subchapter II of this chapter of this chapter [sic] that *were paid* in the months in which they were regularly due.  However, Mr. Mauger was never paid Title II benefits in the months in which they were regularly due and was not paid them before the SSI benefits were paid."  Pl. Reply, p. 3 (emphasis added).  However, the provision directly applies to Mr. Mauger's situation, because § 1320a-6(a)(1) in fact provides that the section is applicable when the Title II benefits *"were not paid* in the months in which they were regularly due."  42 U.S.C. § 1320a-6(a)(1) (emphasis added).

15

(2) is an individual or eligible spouse eligible for supplemental security income benefits for one or more months in which the benefits referred to in clause (1) were regularly due,

then any benefits under subchapter II of this chapter that were regularly due in such month or months, or supplemental security income benefits for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual or spouse if he had received such benefits under subchapter II of this chapter in the month or months in which they were regularly due. A benefit under subchapter II of this chapter shall not be reduced pursuant to the preceding sentence to the extent that any amount of such benefit would not otherwise be available for payment in full of the maximum fee which may be recovered from such benefit by an attorney pursuant to subsection (a)(4) or (b) of section 406 of this title.

(b) "Supplemental security income benefits" defined
For purposes of this section, the term "supplemental security income benefits" means benefits paid or payable by the Commissioner of Social Security under subchapter XVI of this chapter, including State supplementary payments under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212(b) of Public Law 93-66.

(c) Reimbursement of the State
From the amount of the reduction made under subsection (a) of this section, the Commissioner of Social Security shall reimburse the State on behalf of which supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the month or months involved exceeded the expenditures which the State would have made (for such month or months) if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence shall be covered into the general fund of the Treasury.

42 U.S.C. § 1320a-6.

In subsequent challenges to this amended statute, several United States Courts of Appeals held that § 1320a-6, as amended, did not preclude the SSA from continuing its policy of calculating retroactive SSI benefits prior to computing retroactive DIB benefits. *See, e.g.*, *Splude*, 165 F.3d at 89-90 (1st Cir.); *Sheppard*, 906 F.3d at 761 (D.C. Cir); *White*, 835 F.2d at 978 (2d Cir.); *Detson*, 788

16

F.2d at 375 (6th Cir.); *McKenzie*, 787 F.2d at 1219-20 (8th Cir.); *Wheeler*, 787 F.2d at 106 (3d Cir.); *Cuthbert*, 784 F.2d at 1160 (4th Cir.).

The court in *White* noted that Congress explicitly addressed the situation at issue of concurrent applications for DIB and SSI by making the windfall offset provision in the amended version of § 1320a-6 applicable "whether or not [SSI benefits are] paid retroactively." *White*, 835 F.2d at 978; *see also Sheppard*, 906 F.2d at 761 (holding that the offset is not "inappropriate when the agency makes the retroactive eligibility determination for both at the same time"); *McKenzie*, 787 F.2d at 1219-21 (holding that the "statute clearly applies to concurrent adjudications of [DIB] and SSI benefits" and that the statute "certainly does not prohibit the calculation of SSI benefits first in concurrent applications").[7] More importantly, nothing in § 1320a-6 "precludes the [SSA] from continuing its policy of calculating retroactive SSI benefits prior to retroactive [DIB]." *White*, 835 F.2d at 978; *see also McKenzie*, 787 F.2d at 1219.

Finally, the SSA's practice of offsetting a retroactive DIB award by the amount of a retroactive SSI award "advances the express congressional purpose to prevent windfalls to retroactive beneficiaries." *Sheppard*, 906 F.2d at 761 (citing *McKenzie*, 787 F.2d at 1219-20 (quoting S.Rep.No. 408, 98th Cong., 2d Sess. 78 (1980)), U.S. Code Cong. & Admin. News 1980, pp. 1277, 1356); *White*, 835 F.2d at 977 n.2; *Wheeler*, 787 F.2d at 105-06); *see also Cuthbert*, 784 F.2d at 1160.

> Congress intended to prevent windfalls and did not draw distinctions between the desire to reimburse local welfare agencies in the case where a person who received interim assistance once contributed to the social security fund and the case where a

---

[7] Although not at issue in this case, the amended statute also provides the SSA with the option of reducing retroactive SSI benefits in lieu of retroactive DBI benefits. *White*, 835 F.2d at 978. The 1984 amendment added this language to preclude a windfall of federal benefits when a retroactive DIB award is made prior to the retroactive SSI award. *See White*, 835 F.2d at 978 n. 2.

> disabled person never so contributed.  While former employment and contributions to the social security fund are prerequisites to receipt of [DIB], nothing suggests that Congress intended to reimburse to a lesser extent the local welfare agencies that provide interim assistance where the claimant currently meets the welfare assistance needs test.  The windfall which concerned Congress relates both to offsetting retroactive [DIB] and SSI benefits and to offsetting these federal disability benefits and local welfare assistance.

*McKenzie*, 787 F.2d at 1221 (citing *Gallo v. Heckler*, 600 F. Supp. 1513, 1519 (E.D.N.Y. 1985);

*Lindsay v. Secretary of Health and Human Srvcs.*, 612 F. Supp. 366, 368 (D.N.J. 1985)).

This is exactly the type of windfall Mr. Mauger indirectly seeks to reap.  Mr. Mauger is correct in his Brief that he is not asking for double payment of SSI and DIB, which would be a payment of $59,031.00 in retroactive DIB and $33,942.34 in retroactive SSI.  However, in his arguments, Mr. Mauger asserts that his $59,031.00 in retroactive DIB should have been calculated first, which would have led the SSA to find that he was not eligible for all but $313.34 of the retroactive $33,942.34 in SSI under the windfall offset statute.  Although SSI can be paid to the states by the SSA as reimbursement for interim assistance pursuant to § 1383(g), DIB cannot be assigned, *see* 42 U.S.C. § 407, and under his methodology, Mr. Mauger would receive the full $59,031.00 in retroactive DIB and would only have to pay back $313.34 of the $21,637.47 he received while awaiting the determination of his federal benefits, creating a windfall of $21,324.13 in Mr. Mauger's favor.

If the SSA were to calculate his retroactive benefits by applying the means test, as is done for prospective benefits and as requested by Mr. Mauger, Mr. Mauger would effectively bypass his responsibilities and obligations to the State to reimburse the interim assistance.  Such a result would "defeat the intent of Congress that a claimant receive no more in retroactive benefits than he would have received had those benefits been paid prospectively."  *White*, 835 F.2d at 978-79.

This windfall provision is the well established procedure utilized by the SSA to calculate retroactive benefits, yet Mr. Mauger argues that the means test, utilized for calculating prospective benefits, should be used instead.  However, Mr. Mauger provides no explanation why the persuasive appellate case law upholding the practice should be ignored or why the State should not be reimbursed.  Mr. Mauger has not suggested, nor can the Court imagine any reason, why Congress would want him to receive the windfall that he seeks.  *See Sheppard*, 906 F.2d at 761.  Importantly, although Mr. Mauger ultimately received less in his final retroactive DIB payment, he had actually received the sum of that reduction in the form of interim assistance from the State over the course of the years he awaited his federal benefits.  In the end, he received the same sum of money, just from different sources.

The Court finds that the SSA's practice of calculating retroactive SSI benefits prior to retroactive DIB benefits for concurrent, retroactive applications is consistent with the language of § 1320a-6.  The Court further finds that ALJ Dadabo was correct in determining that the SSA reasonably calculated Mr. Mauger's retroactive SSI benefits first under the windfall offset statute in order to ensure that the State received reimbursement for interim funds previously disbursed to Mr. Mauger.

b.  42 U.S.C. § 407 - The Anti-Assignment Clause of the Act

Mr. Mauger also argues that ALJ Dadabo's finding that payment was properly made pursuant to the assignment Agreement and that the windfall provision under § 1320a-6 allowed for the payment is in conflict with the anti-assignment clause, 42 U.S.C. § 407.

The anti-assignment clause provides, in relevant part:

19

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407.  By the language of the statute, the assignment of benefits to any creditor is impermissible, unless Congress expressly provides otherwise.  In *Philpott*, the Supreme Court held that state welfare agencies constitute creditors for the purposes of § 407.  409 U.S. 413.  However, pursuant to 42 U.S.C. § 1383(g),[8] Congress has authorized the SSA to pay SSI benefits directly to

---

[8] 42 U.S.C. § 1383(g), entitled "Reimbursement to States for interim assistance payments," provides, in relevant part:

(1) Notwithstanding subsection (d)(1) of this section and subsection (b) of this section as it relates to the payment of less than the correct amount of benefits, the Commissioner of Social Security may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof if agreed to by the Commissioner of Social Security and the State) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision).

(2) For purposes of this subsection, the term "benefits" with respect to any individual means supplemental security income benefits under this subchapter, and any State supplementary payments under section 1382e of this title or under section 212 of Public Law 93-66 which the Commissioner of Social Security makes on behalf of a State (or political subdivision thereof), that the Commissioner of Social Security has determined to be due with respect to the individual at the time the Commissioner of Social Security makes the first payment of benefits with respect to the period described in clause (A) or (B) of paragraph (3). A cash advance made pursuant to subsection (a)(4)(A) of this section shall not be considered as the first payment of benefits for purposes of the preceding sentence.

(3) For purposes of this subsection, the term "interim assistance" with respect to any individual means assistance financed from State or local funds and furnished for meeting basic needs (A) during the period, beginning with the month following the month in which the individual filed an application for benefits (as defined in paragraph (2)), for which he was eligible for such benefits, or (B) during the period beginning with the first month for which the individual's benefits (as defined in paragraph (2)) have been terminated or suspended if the individual was subsequently found to have been eligible for such benefits.

42 U.S.C. § 1383(g).

state welfare agencies, upon written authorization of the beneficiary, as reimbursement for interim assistance.  No such similar provision has been enacted with regard to DIB.

Mr. Mauger argues first that the SSA's application of the windfall offset provision at § 1320a-6 to offset his retroactive DIB by the amount of the retroactive SSI payment essentially transforms his DIB into SSI to circumvent § 407 and allow an alienation of his DIB by the amount of reimbursement to the State.  He then reasons that, because § 1320a-6 does not specifically reference § 407, the SSA's application of the provision is invalid as applied in Mr. Mauger's case.

Practically, this is simply not the case.  Although Mr. Mauger's retroactive DIB were reduced by the sum of his retroactive SSI, some of which were reimbursed to the State, Mr. Mauger's DIB were not reimbursed by the SSA to the State.  Rather, the SSA withheld $21,637.47 of retroactive SSI benefits to reimburse the State for the interim assistance received by Mr. Mauger, as is permitted by 42 U.S.C. § 1383(g) and 20 C.F.R. § 416.525.  Only Mr. Mauger's SSI monies were paid to the State.  As other courts have recognized, there is no statutory guidance in either § 407 or § 1320a-6 as to the order in which retroactive benefits are to be calculated.  *See White*, 835 F.2d at 978; *McKenzie*, 787 F.2d at 1221.  However, as discussed above, Congress did intend to prevent a windfall of benefits, and the SSA is "justified in first calculating [retroactive] SSI benefits and then adjusting the [retroactive DIB] payment as a way of avoiding either a violation of § 407 or a windfall to plaintiff, at the same time compensating the state government for its tender of interim assistance."  *Sheppard*, 906 F.2d at 761 n.3 (citing *Gallo v. Heckler*, 600 F. Supp. 1513 (E.D.N.Y. 1985); *see also White*, 835 F.2d at 978 (citing *McKenzie*, 787 F.2d at 1221).

The court in *White* found that the SSA's policy of preventing windfalls, whether by federal or state monies, "is consistent with the overall framework of the Act which contemplates shared

21

federal and state responsibility for funding and administering benefits programs." *White*, 835 F.2d at 978 (citation and internal quotation marks omitted). Moreover, allowing the SSA first to calculate retroactive SSI benefits ensures the availability of funds to reimburse state welfare agencies providing interim assistance. *Splude*, 165 F.3d at 90; *White*, 835 F.2d at 979 (citing *Wheeler*, 787 F.2d at 107). Notably, Mr. Mauger accepted the interim assistance from the State knowing that it would later have to be paid back from his retroactive SSI pursuant to their Agreement. Finally, as set forth in Part A, the Court has already found that the SSA's policy of calculating retroactive SSI benefits prior to retroactive DIB is proper and justified as a means to ensure the compensation of states for interim assistance and to avoid a windfall to claimants who would not have to reimburse state interim assistance.

The Court finds that § 407 does not confer a right to have retroactive DIB calculated prior to retroactive SSI benefits. Nor is the Court willing to characterize the retroactive SSI benefits from which the reimbursement for interim assistance was deducted as the equivalent of Mr. Mauger's retroactive DIB. *See Splude*, 165 F.3d at 89-90 (declining to characterize retroactive SSI benefits from which interim assistance was deducted as retroactive DIB benefits). The Court also finds that the SSA's approach to calculating retroactive SSI benefits and reimbursing state interim assistance therefrom prior to retroactive DIB constitutes a proper exercise of discretion and is not arbitrary or capricious. *See White*, 835 F.2d at 979 (citing *Heckler v. Campbell*, 461 U.S. 458, 466 (1983) (holding that the SSA's interpretation of provisions of the Act may not be disturbed by a court unless either arbitrary and capricious or outside Secretary's statutory authority)); *Wheeler*, 787 F.2d at 106. *Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984).

22

Therefore, ALJ Dadabo did not err in upholding the calculation of Mr. Mauger's benefits.

c. Constitutional Claims

In his Brief, Mr. Mauger argues that he was denied due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution when the SSA did not provide him notice and an opportunity to be heard prior to deducting the $21,637.47 from his SSI benefits and forwarding them to the State.  He also claims that the payment to the State constitutes a taking of a valuable property right.  The Commissioner responds that there was no taking and Mr. Mauger was not entitled to notice and a hearing prior because Mr. Mauger is challenging an internal SSA calculation of benefits prior to any monies being distributed to Mr. Mauger.   The Commissioner also argues that Mr. Mauger has not identified the suspect classification he claims violates the equal protection clause.  Mr. Mauger does not revisit his constitutional claims nor address the Commissioner's arguments in his Reply.

First, Mr. Mauger argues that his due process rights were violated when the SSA failed to provide him notice and the opportunity to be heard regarding the forwarding of retroactive SSI to the State.  However, the benefit calculations by the SSA, including the reimbursement to the State and the offset of Mr. Mauger's DIB, were made in the course of determining what monies Mr. Mauger was initially due.  The government was hardly obliged to pay out moneys before initially determining what was due or to give Mr. Mauger notice before having determined what monies he was initially due.  *See Splude*, 165 F.3d at 91.

Mr. Mauger also argues that the payment to the State represents a taking of a valuable property right "as anticipated by the Supreme Court" in *Goldberg v. Kelly*, 397 U.S. 254 (1970).

Pl. Br., p. 12.  Mr. Mauger considers that the $21,637.47 of SSI benefits repaid to the State was a valuable property right because they were actually paid out of his "highly protected Title II [DIB] benefits," which are "drawn from the Social Security trust fund paid for by contributions from the Claimant and his employers and represent a pension fund."  *Id*.  Finally, he asserts that notice is a fundamental right when the government executes its right to take a valuable property interest, citing *Califano v. Yamasaki*, 442 U.S. 689 (1979).

However, the Court has already held, as supported by substantial, persuasive case law, uncontested by Mr. Mauger, that the retroactive SSI benefits that were used to reimburse the State for interim assistance were not the equivalent of his retroactive DIB, nor is the Court willing to characterize the retroactive SSI as retroactive DIB for that transaction.  Therefore, the alleged property right asserted by Mr. Mauger–his retroactive DIB–was not utilized to reimburse the State.

In support of his position that the payment to the State was a taking of a valuable property right, Mr. Mauger generally cites *Goldberg v. Kelly*, 397 U.S. 254 (1970), without further analysis. In *Goldberg*, the Supreme Court found that the termination of public assistance to a recipient without affording him an opportunity for an evidentiary hearing prior to the *termination* of benefits denied the recipient procedural due process.  397 U.S. at 261.  There is no termination of benefits at issue in Mr. Mauger's case.  Instead, the calculation of Mr. Mauger's retroactive SSI benefits, including the payment to the State, constitute an initial, internal SSA determination of benefits. Prior to the calculation, Mr. Mauger was not yet receiving SSI benefits, nor was he awarded any amount of benefits, unlike the welfare recipients in *Goldberg*, who were already receiving public assistance when it was terminated.  The Court has found that the SSA used a proper procedure to calculate Mr. Mauger's retroactive benefits.  He was first paid the full amount of retroactive SSI

24

benefits to which he was entitled, some of which was paid earlier by the State in interim assistance for Mr. Mauger's benefit.  The SSA then reduced his retroactive DIB under the windfall offset statute to account for the excess SSI to which Mr. Mauger was not entitled.  Therefore, he was not "condemned to suffer grievous loss." *Id*. at 262.  Accordingly, neither the reimbursement from his retroactive SSI nor the deduction from his DIB for the previously paid SSI constitutes a taking or a wrongful interference with a property interest, *see Splude*, 165 F.3d at 91, and there was no requirement of notice and an opportunity to be heard.  Nor was Mr. Mauger denied a post-determination opportunity for a hearing once he received notice of the calculations and of the sixty-day appeal period.  Mr. Mauger had a hearing before an ALJ, whose decision Mr. Mauger has appealed to the Appeals Council and to this Court.

In support of his constitutional arguments, Mr. Mauger also cites *Califano v. Yamasaki*, 442 U.S. 682 (1979), without further analysis, for its holding that notice is a fundamental right when the government executes its right to take a valuable property interest.  However, there was not a taking of a valuable property interest in this case.  In *Califano*, the SSA determined that certain social security beneficiaries had been overpaid and sought to recoup those overpayments by withholding future benefits to which respondents would otherwise be entitled.  442 U.S. at 684.  The Supreme Court held that, under 42 U.S.C. § 404(a), as to a reconsideration of whether overpayment occurred, neither the statute nor the Constitution required an oral hearing prior to the withholding of future benefits, and that under 42 U.S.C. § 404(b), as to waiver of the SSA's right to recoup, the statute itself required a hearing, so the Court did not reach the constitutional issue.

As set forth in detail in Part C below, Mr. Mauger did not receive an erroneous "overpayment" within the meaning of § 404 because he did not receive excess monies to which he

was not due, unlike the recipients in *Califano*. The SSA used an offset method to calculate his retroactive DIB, reducing those benefits by the amount of retroactive SSI benefits already paid, pursuant to the procedures set forth in 42 U.S.C. § 1320a-6; there was no recoupment from Mr. Mauger's prospective benefits under § 404 as in *Califano*. Mr. Mauger has not explained why the application of the windfall clause invokes the same rights as the application of the statutory recoupment clause. For example, the limit within § 404(b) on the recoupment authority conferred on the SSA under § 404(a)(1) requires a finding of "no fault" by the beneficiary in order for the limitation to apply and the recoupment to be waived. *See* 42 U.S.C. § 404(b);[9] *see also Califano*, 442 U.S. at 685-86. As a result, a pre-recoupment hearing is necessary. No such subjective element of fault is present in the utilization of the windfall provision to calculate Mr. Mauger's retroactive DIB and SSI benefits.

Two other significant differences between the present case and the benefits under consideration in *Califano* and *Goldberg* demonstrate that Mr. Mauger did not have a protected interest in the calculation of his retroactive benefits. First, *Goldberg* and *Califano* dealt with the termination or reduction of *future* benefit payments. In the present case, Mr. Mauger is challenging the calculation of his retroactive benefits, which he was to receive in a lump sum payment, in addition to his monthly, prospective benefits. The calculation of his retroactive benefits in no way

---

[9] 42 U.S.C. § 404(b), entitled "No recovery from persons without fault," provides:
In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).
42 U.S.C. § 404 (b).

impacted his continuing eligibility for prospective benefits, *compare Goldberg*, nor did it reduce his *prospective* benefits to reimburse the SSA for a past overpayment,[10] *compare Califano*.

Second, the Supreme Court in *Goldberg* and *Califano* was concerned with the termination or reduction of benefits that are the very means by which the recipient has to live while appealing or seeking reconsideration of the decision to terminate or reduce benefits, which in turn adversely affects the recipient's ability to seek a remedy with the government to reinstate his benefits. *See Califano*, 442 U.S. at 686 (citing 20 C.F.R. § 404.508(a)); *Goldberg*, 397 U.S. at 264. Mr. Mauger's situation was quite the opposite. Mr. Mauger was able to avoid such adverse living conditions while he awaited a determination of his federal benefits, by receiving State interim assistance beginning in 1997. Once he was found to meet the disability eligibility requirements for federal DIB and SSI, the SSA proceeded to calculate both his retroactive and his prospective benefits separately. In calculating his retroactive benefits, the SSA reimbursed the State for the interim assistance received by Mr. Mauger and paid Mr. Mauger the remaining benefits. This calculation in no way reduced his prospective benefits.

In arguing that he had a right to notice and a hearing to challenge this procedure prior to the calculation of his benefits, Mr. Mauger explains that he would have argued that his retroactive DIB should have been calculated first under the means method, as is done for prospective benefits. Although he does not so state in his argument, the advantage to this calculation is that Mr. Mauger would not be required to pay back the state for the $21,637.47 of interim assistance, which would net Mr. Mauger a windfall of $21,324.13 ($21,637.47 minus the $313.34 in retroactive SSI he would be entitled to if the retroactive DIB was calculated first). This windfall is hardly comparable to the

---

[10] Again, the initial payment of retroactive SSI benefits is not considered a statutory overpayment. *See infra* Part C.

interests of the beneficiaries in *Goldberg* and *Califano* who were facing the termination or reduction of future benefits on which they relied for their daily existence.

Based on the foregoing, Mr. Mauger's procedural due process and takings claims must fail.

Mr. Mauger also alleges that he was denied equal protection under the Fifth and Fourteenth Amendments. *See* Pl. Br., p. 20. In the areas of social and economic policy, a classification by the government need only be rationally related to a legitimate government interest. *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (recognizing that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification"); *Richardson v. Belcher,* 404 U.S. 78 (1971) (holding that federal statute mandating reductions in Social Security benefits to reflect workers' compensation payments is social welfare regulation that survives rational-basis review); *Lamers Dairy Inc. v. U.S. Dept. of Agr.*, 379 F.3d 466, 473 (7th Cir. 2004); *Illinois Health Care Ass'n v. Illinois Dept. of Public Health*, 879 F.2d 286, 288 (7th Cir. 1989). "In the area of economics and social welfare, a State does not violate the Equal Protection Clause [and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment] merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequity." *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)) (internal citation omitted).

In this case, its appears that Mr. Mauger is arguing that the classification arises from the creation of two classes of similarly situated beneficiaries–retroactive or prospective–because different calculations are used for each: the windfall offset provisions is used for retroactive benefits, and the means test is used for prospective benefits.  Pl. Br., Part V, pp. 19-20.

First, it is difficult to see how the recipients of retroactive benefits and the recipients of prospective benefits are similarly situated.  Whereas retroactive benefits pay what an eligible recipient did not receive while awaiting the determination of disability and benefits, prospective benefits are meant to provide the recipient with assistance in ensuring that his future basic living needs are met while he continues to qualify for benefits.  Although recipients receiving retroactive benefits may have received state interim assistance during the retroactive period, as did Mr. Mauger, recipients of prospective benefits do not receive interim assistance.  Therefore, the need for reimbursement to the states in the calculation of retroactive benefits is not present in the calculation of prospective benefits.

In addition, other than positing that the tests lead to inconsistent results for the two calculations, Mr. Mauger does not explain the harm in the use of two different tests.  The windfall offset statute and the SSA internal policies call for the calculation of retroactive SSI benefits first to ensure that the state is reimbursed and that recipients do not receive a windfall.  Similarly, for prospective calculations, the means test, which counts prospective DIB payments as income for the purposes of calculating prospective SSI benefits, ensures that a recipient is not receiving more than he is entitled to in SSI benefits.  Again, the purpose of the windfall offset statute is to ensure that recipients of concurrent, retroactive benefits do not receive more than they would in prospective benefits.  *See White*, 835 F.2d at 978-79.

29

Moreover, the retroactive recipient receives the same total amount of retroactive benefits he would have received whether or not he had received the interim state assistance,[11] it is simply the source and timing of the retroactive benefits that differs:

(1) if Mr. Mauger had not received the state interim assistance, he would have received the entire sum of $33,942.34 in retroactive SSI first, $33,620.00[12] of which would have later been used to offset his retroactive DIB of $59,031.00, for a total final payment of retroactive DIB of approximately $21,425.00,[13] and Mr. Mauger would have kept the difference of $313.34 in retroactive SSI benefits that he was already paid to which he was still entitled;

(2) as Mr. Mauger did receive $21,637.47 in state interim assistance, he received a payment of only $12,304.87 of his $33,942.34 in retroactive SSI benefits ($33,942.34-$21,637.47) after the determination of benefits in January 2002 and after the State was reimbursed the $21,637.47, and once his retroactive DIB were calculated at $59,031.00 and the $33,620.00 in retroactive SSI benefits for which he was determined not to be eligible along with other fees were deducted and other monies he was due through June 2002 were added back in, he received a check for $21,425.00.

The only difference between the two scenarios is the timing of when Mr. Mauger received the funds.  In the first, hypothetical scenario, Mr. Mauger received the $33,620.00 in retroactive SSI

---

[11] The Court notes that Mr. Mauger has not argued that he is being treated differently than others who are also receiving retroactive benefits.  In fact, the SSA internal policy provides that SSI claims must be adjudicated prior to authorizing payment of retroactive DIB in concurrent DIB/SSI claims, and in the absence of any language to the contrary, the policy applies to all such retroactive calculations.  *See* SSA Policy Site: POMS Section SI 02006.005, *available at* http://policy.ssa.gov/poms.nsf/lnx/0502006005!opendocument (last visited February 16, 2006).

[12] $33,629.00 is the amount of retroactive SSI benefits the SSA determined Mr. Mauger was no longer eligible for once they had calculated his $59,031.00 in retroactive DIB benefits.

[13] This figure is based on the actual amount paid to Mr. Mauger after the retroactive SSI benefits that had been paid to him and the State were deducted from his DIB along with attorney fees and other payments.

benefits later deducted from his retroactive DIB benefits in a lump payment in January 2002, whereas in the second, actual scenario, Mr. Mauger received the first $21,637.47 of the $33,620.00 over a period of time in the form of interim assistance from the state and then the remaining $12,304.87 in a lump sum payment in January 2002.

In both scenarios, Mr. Mauger is the beneficiary of the full $33,620.00, whether first paid by the State or later paid by the SSA. Therefore, Mr. Mauger did not receive any less in total benefits than someone entitled to the same benefits who did not have an assignment agreement with a state welfare agency.

Even if the Court were to find that recipients of retroactive benefits and recipients of prospective benefits are similarly situated, the Court finds that the SSA addresses an important public interest in first calculating retroactive SSI benefits under the windfall offset statute in order to reimburse state welfare programs for interim assistance paid to individuals awaiting adjudication of their federal benefits. This procedure is rationally related to a legitimate governmental interest and there is no violation of the Equal Protection Clause. Mr. Mauger has not met his burden of demonstrating that the alleged classification, if any, violates the generous rational basis standard of review, and his equal protection claim must fail.

**B.  ALJ Asbille's Decision**

Mr. Mauger contends that the language used in ALJ Asbille's December 18, 2001 decision required the SSA to calculate his retroactive DIB prior to calculating his retroactive SSI and to consider those retroactive DIB as a resource or income under the means test when calculating his

SSI payments.  Mr. Mauger relies on the following excerpt from ALJ Asbille's decision for this contention:

> Based on the Title II applications filed on June 11, 1996 and June 23, 2000 the claimant is entitled to a period of disability commencing August 1, 1995 and to disability insurance benefits under Section 216(i) and 223 of the Social Security Act, respectively, and the claimant's disability has continued at least through the date of this decision.
>
> It is the further decision of the Administrative Law Judge that based on the Title XVI applications filed on June 11, 1996 and June 23, 2000, the claimant has been disabled since August 1, 1995, under Sections 1614(a)(3)(A) of the Social Security Act, and the claimant's disability has continued through the date of this decision.
>
> The Social Security Administration must also determine whether the claimant meets the income and resources and other eligibility requirements for supplemental security income payments, and if the claimant is eligible the amount and the month(s) for which the claimant will receive payment.  The claimant will receive a notice from another office of the Social Security Administration when that office makes those determinations.

R. at 170-71.

A careful reading of ALJ Asbille's December 18, 2001 decision, including the cited portion, reveals that the ALJ did not include any direction to the SSA on the order in which the retroactive DIB and SSI benefits were to be calculated.  A more reasonable interpretation of the decision is that the ALJ made separate findings in the first two paragraphs as to Mr. Mauger's entitlement to DIB and SSI benefits and then ordered, in a third paragraph, that the SSA must make a determination of whether Mr. Mauger qualified for SSI based on resources and income.  The simple fact of the order of the finding of entitlement to DIB in the first paragraph and the finding of entitlement to SSI in a subsequent paragraph does not mandate that the SSA make its calculations in that order.  Moreover, there is nothing in the decision suggesting that the SSA should not follow their regular internal processes or guidelines for determining payment of retroactive benefits.

The only clear direction by ALJ Asbille as to the calculation of benefits is in the third paragraph, in which the ALJ orders that the SSA must determine whether Mr. Mauger meets the "income and resources and other eligibility requirements for supplemental security income payments." R. at 171. This order was not violated. When Mr. Mauger's SSI benefits were calculated first, the retroactive DIB had not yet been calculated and, therefore, could not be included as unearned income in the calculation of SSI. When the retroactive DIB were eventually calculated, the SSA utilized the windfall offset provisions to decrease the retroactive DIB ($59,031.00) by the amount of retroactive SSI benefits ($33,629.00) already paid to Mr. Mauger and the State pursuant to the Agreement and to which he was no longer eligible based on his retroactive DIB benefits. The Court has already approved this process for calculating retroactive benefits.

Finally, as ALJ Dadabo noted in his decision, had the SSA applied ALJ Asbille's decision in the manner suggested by Mr. Mauger and calculated his retroactive DIB first and then applied the means test counting the retroactive DIB in the calculation of the retroactive SSI, Mr. Mauger would have received a windfall and the State would not have been reimbursed for the interim assistance of which Mr. Mauger was a beneficiary. The SSA did not violate ALJ Asbille's December 18, 2001 Order in its calculation of Mr. Mauger's retroactive benefits.

## C.  Overpayment

Mr. Mauger argues that a statutory overpayment was created when the SSA calculated his retroactive SSI benefits without counting his retroactive DIB as income. He further argues that this was a statutory overpayment and thus he was entitled to certain notice and waiver rights. He contends that ALJ Dadabo erred in finding that there was no overpayment because the windfall

33

provisions applied and that, as a result, Mr. Mauger had no right to a determination of waiver of overpayment.

42 U.S.C. § 404 provides:

(a) Procedure for adjustment or recovery

(1) Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security, as follows:

(A) With respect *to payment to a person of more than the correct amount*, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under section 3720A of Title 31, or shall apply any combination of the foregoing. A payment made under this subchapter on the basis of an erroneous report of death by the Department of Defense of an individual in the line of duty while he is a member of the uniformed services (as defined in section 410(m) of this title) on active duty (as defined in section 410(l) of this title) shall not be considered an incorrect payment for any month prior to the month such Department notifies the Commissioner of Social Security that such individual is alive.

42 U.S.C. § 404(a)(1)(A) (emphasis added) (§ 204 of the Social Security Act).

The regulations also address overpayment. Regarding DIB overpayments:

(a) In general. Section 204 of the Act provides for adjustment as set forth in §§ 404.502 and 404.503, in cases where an individual has *received more or less than the correct payment due under title II of the Act*. As used in this subpart, the term overpayment includes a payment in excess of the amount due under title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits under sections 203, 222(b), 224, and 228(c), and (d), and (e) of the Act (see Subpart E of this part), a payment pursuant to section 205(n) of the Act in an amount in excess of the amount to which the individual is entitled under section 202 or 223 of the Act, a payment resulting from the failure to terminate benefits, and a payment where no amount is payable under title II of the Act.

20 C.F.R. § 404.501(a) (emphasis added).

Regarding SSI overpayments, the regulations provide:

(a) Overpayments. As used in this subpart, the term overpayment means payment of more than the amount due for any period, including any amounts of State supplementary payments which are due and administered by the Social Security Administration. For purposes of this section, payment has been made when certified by the Social Security Administration to the Department of the Treasury, except that payment has not been made where payment has not been received by the designated payee, or where payment was returned. When a payment of more than the amount due is made by direct deposit to a financial institution to or on behalf of an individual who has died, and the financial institution credits the payment to a joint account of the deceased individual and another person who is the surviving spouse of the deceased individual and was eligible for a payment under title XVI of the Act (including any State supplementation payment paid by the Commissioner) as an eligible spouse (or as either member of an eligible couple) for the month in which the deceased individual died, the amount of the payment in excess of the correct amount will be an overpayment to the surviving spouse.

20 C.F.R. § 416.537(a). The section regarding SSI benefits entitled "Underpayments and Overpayments" provides, in relevant part:

(a) General. When an individual receives SSI benefits of less than the correct amount, adjustment is effected as described in §§ 416.542 and 416.543, and the additional rules in § 416.545 may apply. When an individual receives *more* than the correct amount of SSI benefits, adjustment is effected as described in § 416.570. Refund of overpayments is discussed in § 416.560 and waiver of recovery of overpayments is discussed in §§ 416.550 through 416.555.

20 C.F.R. § 416.535(a) (emphasis added).

Under the statute and the regulations, Mr. Mauger must demonstrate that he "received" more than the correct retroactive SSI payment that he was due. Mr. Mauger first received a check for $12,304.87, which was the remainder of his retroactive SSI benefits ($33,942.34), after the SSA had reimbursed the State for the interim assistance. The SSA then calculated his retroactive DIB. Applying the windfall offset statute, 42 U.S.C. § 1320a-6, the SSA deducted from his retroactive DIB the amount already paid in retroactive SSI benefits (to Mr. Mauger and the State, as well as

35

attorney fees) and sent Mr. Mauger a check for the balance.  Mr. Mauger argues that the letter he received on July 17, 2002, in which the SSA explains the reduction in his retroactive DIB demonstrates the overpayment.  However, the SSA does not utilize the term "overpayment," but rather explains that the lump sum retroactive DIB payment was being reduced because he had already received the retroactive SSI money for June 1996 through 2002.  R. at 63.  The letter further explains that the SSA makes the reduction "to make sure that your total SSI and Social Security monthly payment is not more than it would have been if the Social Security benefits had been paid on time."  *Id*.

At no time was Mr. Mauger paid more than he should have been at any step of the analysis. The Court has already found, as set forth in Part A above, that the SSA properly calculated Mr. Mauger's retroactive SSI benefits prior to calculating his retroactive DIB.  Although the SSA later determined that his retroactive DIB should be offset by the retroactive SSI paid to Mr. Mauger, Mr. Mauger was eligible for the retroactive SSI benefits at the time the SSA calculated them to be $33,942.34.  At no time does Mr. Mauger argue that the calculation of $33,942.34 in retroactive SSI benefits was the incorrect dollar amount at the time of the calculation.

Because Mr. Mauger never actually received more or less than the correct payment due under the Act at any point in the calculation of benefits, the application of the windfall offset provision did not constitute an overpayment.  Accordingly, ALJ Dadabo did not err in finding no overpayment. Moreover, Mr. Mauger was not entitled to the special notice and hearing requirements applicable to overpayments.

### D.  Timing of the Payment to the State

On January 9, 2002, Mr. Mauger received notice of the amount of his retroactive SSI benefits as well as his prospective SSI benefits, as a result of ALJ Asbille's December 18, 2001 favorable decision.  The January 9, 2002 notice includes a section entitled "If You Disagree With The Decision."  R. at 203.  That section grants the recipient sixty days to ask for an appeal, and a subsequent section explains the appeals process.  In Mr. Mauger's case, the SSA forwarded the retroactive SSI money due the State for reimbursement prior to the closing of the sixty-day appeal period.

Mr. Mauger argues that he should have had an opportunity to appeal the amount of benefits in the January 9, 2002 letter prior to the reimbursement being sent to the State because he was not actually entitled to that retroactive SSI money.  As in other parts of his Brief, Mr. Mauger assumes that he was not entitled to that *retroactive* SSI money that was sent to the State because he was later found to be ineligible for *prospective* SSI benefits as set forth in the January 22, 2002 letter.  Again, however, Mr. Mauger mistakenly relies on correspondence regarding the calculation of his prospective benefits to support his argument regarding his retroactive benefits.

Nevertheless, Mr. Mauger also argues that he was not entitled to any retroactive SSI benefits because, if the SSA had calculated his retroactive DIB first, his retroactive SSI benefits would have been zero based on the amount of the retroactive DIB.  From there, he reasons that the State, under the terms of the Agreement, is only entitled to those benefits to which Mr. Mauger was entitled as well.  As found above, in Part A, the SSA's calculation of Mr. Mauger's retroactive SSI benefits first was proper.  Having calculated his retroactive SSI benefits first, there were not DIB for the SSA to take into account.  Therefore, when the State was reimbursed from Mr. Mauger's retroactive SSI

benefits for the interim assistance it had previously paid to Mr. Mauger, Mr. Mauger was entitled to those SSI benefits. *See* Part A, *supra*.

Mr. Mauger also argues that he did not have a right to payment until sixty days after the decision was final, which was December 18, 2001, when ALJ Asbille made his favorable disability determination. Therefore, if the SSA had waited for the expiration of the sixty-day period before paying the State the reimbursement, Mr. Mauger contends that the SSA would have realized that Mr. Mauger was not entitled to the retroactive SSI payments and would not have made a payment to the State.[14] However, Mr. Mauger once again bases this assumption on the January 22, 2002 letter finding that he was not eligible for *prospective* SSI payments because of the amount of his *prospective* DIB benefits. Because the SSA applies an entirely different process for the calculation of retroactive DIB and SSI payments, his argument is unpersuasive. The SSA has a policy of calculating retroactive SSI prior to calculating retroactive DIB, in part, to ensure that there is a source of funds for reimbursement to the State for interim assistance; the Court has found this procedure to be proper. Therefore, waiting to pay the State until after the sixty-day period would not have affected the SSA's calculations.

Moreover, nothing prevented Mr. Mauger from appealing ALJ Asbille's December 18, 2001 ruling within the sixty-day period, notwithstanding the payout to the State; he did not. In contrast, Mr. Mauger has appealed the SSA's calculation of his retroactive benefits and the reimbursement to the State, which is currently pending before the Court. Therefore, Mr. Mauger has not been prejudiced by the timing of the payment to the State by the SSA, in light of the Court's finding that the SSA used an acceptable procedure to calculate those retroactive benefits.

---

[14] Mr. Mauger does not allege that it was otherwise improper for the SSA to reimburse the state prior to the expiration of the sixty-day period.

38

**CONCLUSION**

For the foregoing reasons, the Court finds that ALJ Dadabo did not commit legal err and his decision was supported by substantial evidence. Therefore, the Court **DENIES** the Plaintiff's Opening Brief [DE 16]. The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 22nd day of February, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record

39